METRO–GOLDWYN–MAYER, INC., the Macmillan Company, Inc., Stephens Mitchell and Trust Company Bank as Trustee for Eugene Muse Mitchell and Joseph Reynolds Mitchell, Plaintiffs,

v.

SHOWCASE ATLANTA COOPERATIVE PRODUCTIONS, INC., d/b/a Showcase Cabaret, Plump Bess Productions, Inc., Thomas William Edwards and Kimberley Dobbs, Defendants.

Civ. A. No. C79–1766A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 12, 1979.

J. Rodgers Lunsford, III and Julius R. Lunsford, Jr., of Beveridge, DeGrandi, Kline & Lunsford, Paul H. Anderson, Jr., Mitchell, Clarke, Pate, Anderson & Wimberly, Atlanta, Ga., for plaintiffs.

Anthony B. Askew and Eugene S. Zimmer of Jones, Thomas & Askew, James C. Rawls, of Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

EVANS, District Judge.

The present action, involving alleged copyright infringement, claims of unfair competition and alleged violation of the Anti-Dilution Statute and the Uniform Deceptive Trade Practices Act is before the Court on Plaintiffs' Motion for a Preliminary Injunction.

Plaintiffs have various respective rights or interests in Margaret Mitchell's copyrighted novel, *Gone With The Wind,* and works derived from that novel.[1] Defendants are the respective owners/producers/creators of a musical production entitled "Scarlett Fever", which was originally scheduled to begin public performance in Atlanta on September 21, 1979.[2]

"Scarlett Fever" is a three-hour-long three-act play based on *Gone With The Wind* (primarily, on the film "Gone With The Wind"). It opens, just as the movie does, with the scene at Tara on the day before the Wilkes' barbecue, with Scarlett talking to the Tarleton twins. It moves in sequence through the major episodes of "Gone With The Wind", though in condensed form and omitting certain scenes, and ends as Rhett leaves Scarlett. Interspersed throughout the various scenes are original songs and dance routines.

Although modern vernacular has been employed in certain scenes in "Scarlett Fever", the script on a scene by scene basis is largely faithful to that of the film. The play also utilizes backdrops depicting scenes reminiscent of the major settings in the film, for example, the plantation house at Tara and the train depot in Atlanta with flames in the background. However, the names of the major characters have been changed so that they are, for example, Shady Charlotte O'Mara, Brett Studler, Melody Hampton, Ansley Mall, and so forth. Further, Shady Charlotte's planta-

---

1. Metro-Goldwyn-Mayer, Inc. owns the screen rights and copyright for the film, "Gone With The Wind"; The Macmillan Company, Inc. is the holder of the copyright for the novel *Gone With The Wind*; Stephens Mitchell and Trust Company Bank in their capacity as Trustees for certain heirs of Margaret Mitchell own certain residual interests in the copyrighted works and derivatives thereof, including the stage rights.

2. The dress rehearsal of "Scarlett Fever" on September 18, 1979 was attended by attorneys for the Mitchell interests. The Complaint herein was filed on the morning of September 21, 1979, at which time a temporary restraining order issued.

tion is dubbed "Tiara"; Ansley's home, Thirteen Elms.[3]

As its name implies, Showcase Cabaret provides "cabaret" entertainment, which is predominantly light, musical entertainment in a fairly intimate setting (approximately 150 to 200 seats). The major characters in "Scarlett Fever" are played by a small cast, with most of the actors portraying more than one role in an intentionally obvious way. On the whole, the production is humorous, entertaining and skillfully performed by the cast.

The central issue presented here is whether "Scarlett Fever", asserted by Defendants to be a spoof or parody of *Gone With The Wind*, infringes upon Plaintiffs' copyright interests in the novel (and the film) *Gone With The Wind*. The resolution of this issue primarily lies in a determination of whether Defendants are entitled to invoke the so-called "fair use" defense afforded by 17 U.S.C. § 107, Copyright Act of 1976, which has been a recognized source of protection for such forms of comment upon copyrighted works.

Having viewed "Scarlett Fever" and the film "Gone With The Wind" at the invitation of the litigants, considering the evidence presented at a hearing on October 1, 1979, and having had the benefit of the excellent arguments and briefs of counsel for both sides, the Court concludes that "Scarlett Fever" falls short of entitlement to the fair use defense. In reaching its conclusion, the Court finds that "Scarlett Fever" taken in its entirety is not the sort of original critical comment meant to be protected by the fair use defense, but rather is predominantly a derivative or adaptive use of the copyrighted film and novel *Gone With The Wind*; additionally, that to the extent the production contains critical comment in the form of parody or satire, Defendants have drawn on the copyrighted work far more extensively than is permissible to "conjure up" the subjects or charac-

ters parodied. These issues, together with others, are more fully discussed below.

### A. The showing required by Plaintiffs.

In a copyright case, as in all others, a plaintiff seeking preliminary injunctive relief must demonstrate that there is a substantial likelihood of plaintiff's success on the merits at trial, that irreparable injury will be suffered unless the injunction issues, that the threatened injury to the movant outweighs the damage which the injunction may cause the opponent, and that the injunction would not be adverse to the public interest. *Dallas Cowboys Cheerleaders v. Scoreboard Posters,* 600 F.2d 1184 (5th Cir. 1979). As indicated below, Plaintiffs have very little difficulty in this case making out a prima facie case of copyright infringement. The heart of the case lies in an affirmative defense raised by Defendants, namely that "Scarlett Fever" is saved from copyright infringement by the fair use defense, 17 U.S.C. § 107. On a motion for preliminary injunction, Plaintiffs must demonstrate a likelihood of success on the merits at trial as to asserted affirmative defenses, as well as to the elements of Plaintiffs' prima facie case. *See, Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir. 1974).

### B. Plaintiffs' prima facie case.

In order to obtain injunctive relief for copyright infringement, the movant must show ownership of a valid, existing copyright and copying of the copyrighted material by the defendant. *See Uneeda Doll Co. v. Regent Baby Products Corp.,* 355 F.Supp. 438 (E.D.N.Y.1972); and *Walco Products, Inc. v. Kittay & Blitz, Inc.,* 354 F.Supp. 121 (S.D.N.Y.1972). The parties have stipulated to Plaintiffs' ownership of valid, existing copyrights in the film and novel *Gone With The Wind*. This automatically establishes that Plaintiffs have the exclusive right to prepare derivative

---

**3.** In the original works the equivalents are, of course, Scarlett O'Hara, Rhett Butler, Melanie Hamilton, Ashley Wilkes, Tara, Twelve Oaks.

works[4] based on the copyrighted work, 17 U.S.C. § 106(2); and that Plaintiffs are entitled to prevent any unauthorized " . . . musical arrangement, dramatization . . . or any other form in which the work may be recast, transformed or adapted", 17 U.S.C. § 101.

■ What remains for Plaintiffs to establish a prima facie case is to prove copying by Defendants of the copyrighted material. One method of doing so is to show "substantial similarity" between the copyrighted and the infringing works. *See Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir. 1978); and *Berlin v. E. C. Publications, Inc.,* 329 F.2d 541 (2d Cir. 1964), *cert. denied,* 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964). When dramatic works are at issue, this method involves more than the mere quantitative analysis of dissecting the two works and matching the similarities and differences. It also requires the intrinsic test of the response of an ordinary reasonable person, a form of qualitative analysis. *Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir. 1977). This can be thought of as the "ordinary observation or impression" test. There must appear to be substantial similarity to the ordinary observer, so that the alleged copy comes so near to the original as to give the audience the idea created by the original. *Costello v. Loew's, Inc.,* 159 F.Supp. 782 (D.D.C.1958).

■ It is clear that there is "substantial similarity" between "Scarlett Fever" and the copyrighted works, especially the film "Gone With The Wind", in both quantitative and qualitative terms. The foundation, materials of locale, settings, characters, situations and relationships are basically the same in "Scarlett Fever", the film "Gone With The Wind" and the novel *Gone With The Wind.* The other foundation elements of theme and characterization are also very similar, although the treatment of these elements is at times more comical in "Scarlett Fever" than in the film "Gone With The Wind" or in the novel *Gone With The*

*Wind.* The story line in "Scarlett Fever" is nearly identical to that in the film "Gone With The Wind", although it is somewhat condensed. The dialogue in "Scarlett Fever" is often near-verbatim of the dialogue in the film "Gone With The Wind", though again in a condensed manner and at times inserting modern vernacular in the characters' speech. Not only is a substantial quantity of the film "Gone With The Wind" and the novel *Gone With The Wind* used in "Scarlett Fever", but the impression that "Scarlett Fever" undoubtedly gives to anyone viewing it or reading the script is that it is a version of *Gone With The Wind,* invoking in the audience images of the copyrighted works.

The Court notes that Defendants do not deny that "Scarlett Fever" is quantitatively or qualitatively "substantially similar" to the film "Gone With The Wind" or the novel *Gone With The Wind.* In fact, the Defendants basically agree that "Scarlett Fever" is a comic version of the film "Gone With The Wind" and the novel *Gone With The Wind,* and argue strongly that the nature of their comedy is parody or satire and therefore protected by the "fair use" defense to copyright infringement, 17 U.S.C. § 107 (limitation on exclusive rights: fair use). Having determined that there is the "substantial similarity" between "Scarlett Fever" and the film "Gone With The Wind" and the novel *Gone With The Wind* required for a finding of infringement, the Court now turns to the defenses asserted by the Defendants in this case to decide if there is a substantial likelihood of Plaintiffs' success on the merits as to each of the asserted defenses.

C. Defenses raised by Defendants.

1. Fair use

The first and foremost defense asserted by the Defendants in this case is that "Scarlett Fever" is a parody or satire of the film "Gone With The Wind" and the novel *Gone With The Wind* and therefore protected as a "fair use" under 17 U.S.C. § 107. That

---

4. Also referred to as the adaptation right, see Nimmer, *The Law of Copyright.* § 8.09 (1978).

provision of the Copyright Act of 1976 states that the "fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research, is not an infringement of copyright." Although the "fair use" provision does not mention parody or satire, many courts have recognized that parody or satire may be protected as "fair use", including the Fifth Circuit. *See, Dallas Cowboys Cheerleaders v. Scoreboard Posters, supra; Walt Disney Productions v. Air Pirates, supra*; and *Berlin v. E. C. Publications, Inc., supra.*

In the discussion of the applicability of "fair use" to "Scarlett Fever", the Court first recognizes that the Court is not an expert on literature, drama or comedy, and makes no pretense as to being a dramatic or literary "critic". However, the Court also recognizes that "Scarlett Fever" is to be judged and evaluated on the basis of its overall effect. Counsel for both sides agreed at the hearing on the preliminary injunction that the Court is to look at the work, "Scarlett Fever", as a whole in deciding the threshold question of whether it is a parody or satire before the issue of "fair use" can be addressed. In looking at the play as a whole, the Court finds that "Scarlett Fever" is neither a parody, or a satire. Rather, "Scarlett Fever" is a musical adaptation of the film "Gone With The Wind" and the novel *Gone With The Wind*, generally in the nature of comedy, with some elements of parody but also with some elements of tragedy or straight drama.

The underlying rationale for applying the "fair use" doctrine to parody and satire is that these art forms involve the type of original critical comment meant to be protected by § 107 of the Copyright Act of 1976. The defendants have put forward the following definition of parody and satire, taken from an opinion in a trademark violation case, *Dallas Cowboys Cheerleaders v. Pussycat Cinema*, 467 F.Supp. 366 (S.D.N.Y.1979), in which the court discussed the application of "fair use":

A parody is a work in which the language or style of another work is closely imitated or mimicked for comic effect or ridicule. A satire is a work which holds up the vices or shortcomings of an individual or institution to ridicule or derision, usually with an intent to stimulate change; the use of wit, irony or sarcasm for the purpose of exposing and discrediting vice or folly. (at 376)

This Court accepts this definition, with the caveat that in order to constitute the type of parody eligible for fair use protection, parody must do more than merely achieve comic effect.[5] It must also make some critical comment or statement about the original work which reflects the original perspective of the parodist—thereby giving the parody social value beyond its entertainment function. Otherwise, any comic use of an existing work would be protected, removing the "fair" aspect of the "fair use" doctrine and negating the underlying purpose of copyright law of protecting original works from unfair exploitation by others.

In applying this view to "Scarlett Fever", it is clear that the play is not a parody or satire, although it contains some such elements, because the work as a whole is not a critical commentary on either the film or the novel *Gone With The Wind*. Therefore, "Scarlett Fever" is not protected by the "fair use" doctrine, although the Court does recognize that the songs in "Scarlett Fever" appear to be original and therefore may be protected and not an infringement of Plaintiffs' copyrights. It is the inconsistent use of parody and satire in "Scarlett Fever" that deprives the play of the overall effect or impression of parody or satire, as shown by the following examples. Perhaps the best example of consistent satire in "Scarlett Fever" is the character Melodie, through which the playwright critically comments upon the gentle ("insipid") nature of the character of Melanie ("Melodie"). Similarly, Chaz Hampton is a satiric

---

5. That would be doubly true when the parodied portions of the original work are themselves comic.

character (described as being "like a suck-ling pig"). The name of the play and the names of some of the characters are satiric. An example of the inconsistent use of satire is the character of Charlotte, based on the central character Scarlett O'Hara. At times Charlotte comically exaggerates traits of Scarlett, thereby critically commenting upon them, while at other times Charlotte is treated strictly comically (no comment on the character of Scarlett, just for laughs) or very dramatically, thereby denying an overall impression of satire.

The characters of Mammy and Sissy (the latter being the counterpart of Prissy, the character played in the film "Gone With The Wind" by Butterfly McQueen) in "Scarlett Fever", although comical, are examples of imitating what was a comical characterization, or comic relief, in the film "Gone With The Wind" and therefore involve no comment upon the original characters. The character "Aunt Kitty Kat" is an example of a character varied from the original, but not in a manner which reflects comment on the original character Aunt Pitty Pat, who may be recalled from the film "Gone With The Wind" as a highly nervous but lovable old maid possessing corkscrew curls, lace handkerchiefs and continually fluttering hands—definitely a comic relief character. Aunt Kitty Kat in the play incorporates the basic features of Aunt Pitty Pat; the original touch is that she is played by a male actor, whose purposely ill-concealed male identity is not parody or satire but rather pure comedy.

There are also several highly serious or dramatic sequences in "Scarlett Fever"[6] perhaps the most lengthy of which is the return to Tiara in Act II involving Charlotte's contact with her insane father and learning of her mother's death and the ruin of her home by the Yankees. Further, the character Brett Studler did not appear to add any new dimension or comment on the original character Rhett Butler, but rather seemed to be a non-comic imitation.

Even if "Scarlett Fever" was a parody or satire in its overall effect, the Court finds that the play is still not protected by "fair use" because "Scarlett Fever" incorporates more material from the film "Gone With The Wind" and the novel *Gone With The Wind* than "fair use" allows. The four factors or guidelines enumerated by 17 U.S.C. § 107 to be "considered" in determining whether "fair use" applies are the following:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. (17 U.S.C. § 107)

The first factor, the purpose and character of the use, is assumed to be parody or satire, which is generally a recognized "fair use". The second factor, the nature of the copyrighted work, is a novel and a film and any derivative uses of such works, including any non-parodic or non-satirical form of theatrical production. The other two factors, the amount and substantiality of the portion used and the effect upon the Plaintiffs' potential market, are more significant and are really the factors at issue once the assumption of parody or satire is made.

Several cases from the Second and Ninth Circuits have developed rules to be applied when analyzing the amount and substantiality of the original work used in the alleged infringing work. There is a threshold test, the so-called *Benny* test, which holds that exact or "near-verbatim" copying of a copyrighted work prevents application of a "fair use" defense, even if the infringing work is a parody or satire. This test arose in *Benny v. Loew's Incorporated,* 239

---

**6.** The dress rehearsal version of "Scarlett Fever" as viewed by Plaintiffs' representatives contained several additional serious dramatic scenes not contained in the version viewed by the Court. The findings contained in this Order are based upon the latter version, although the scripts of both versions are contained in the record herein.

F.2d 532 (9th Cir. 1956), *aff'd by an equally divided court,* 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583 (1958), in which the Ninth Circuit said:

> The fact that a serious dramatic work is copied practically verbatim, and then presented with actors walking on their hands or with other grotesqueries, does not avoid infringement of the copyright. (at 536)

Although the court in *Benny* referred to substantial similarity in applying this test, it is recognized that the court intended "near-verbatim" to be the standard. *See Walt Disney Productions v. Air Pirates, supra.* Otherwise, the test for finding infringement and the test for disallowing "fair use" would be the same, effectively eliminating the "fair use" standard. Although there is "near-verbatim" copying by "Scarlett Fever" of the dialogue and other elements of the film "Gone With The Wind", there is enough originality in "Scarlett Fever", particularly the songs, so that it passes the *Benny* test, albeit barely.

However, "Scarlett Fever" incorporates much more of "Gone With The Wind" than is necessary to "recall or conjure up" the original works and therefore no "fair use" applies. The "recall or conjure up" test was fully articulated by the Second Circuit in *Berlin v. E. C. Publications, Inc., supra,* and more recently applied by the Ninth Circuit in *Air Pirates.* In *Berlin,* the court devised this test from two earlier district court cases from California, *Loew's, Inc. v. Columbia Broadcasting System,* 131 F.Supp. 165 (S.D.Cal.1955) (the *Benny* case) and *Columbia Pictures Corp. v. National Broadcasting Co.,* 137 F.Supp. 348 (S.D.Cal.1955) (the "From Here to Obscurity" case), both decided by Judge Carter. In discussing the rationale of those two cases, the court in *Berlin* said:

> . . . in both, it [the district court] conceded that the parodist must be permitted sufficient latitude to cause his reader or viewer to "recall or conjure up" the original work if the parody is to be successful. But in Benny's case, the Court concluded, this license had been grossly exceeded. Not only had the paro-

dy followed the general plot of the original motion picture, but specific incidents and details had been copied and extensive portions of the dialogue had been reproduced verbatim. It was this borrowing from the original to a far greater degree than that required if the parody is to "recall or conjure up" that original, which caused the court to reject the defense of "burlesque" . . . (at 544)

In holding that there was "fair use" in *Berlin,* the court found

> The disparities in theme, content and style between the original lyrics and the alleged infringements could hardly be greater . . . While brief phrases of the original lyrics were occasionally injected into the parodies, this practice would seem necessary if the defendants' efforts were to "recall or conjure up" the originals . . . (at 545)

"Scarlett Fever" clearly fails the test developed by the court in *Berlin.* "Scarlett Fever" closely follows the general plot of the film "Gone With The Wind", copies specific incidents and details extensively, and reproduces significant portions of the dialogue in a nearly identical manner. Furthermore, the disparities in theme, content, and style between the works, where they do exist, are not very significant. Also, much more than "brief phrases" of the original works are more than "occasionally injected" into "Scarlett Fever". Given the fact that the characters, plot, and dialogue of *Gone With The Wind* are well-known to the public, it appears that such extensive copying of the original works was not necessary to "conjure up" or "recall".

Defendants argue that such an extensive incorporation of material from *Gone With The Wind* is not only justified but required under the test of "recall or conjure up" as applied in *Air Pirates, supra.* This Court finds that such an interpretation of *Air Pirates* is in error.

In *Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir. 1978), the court recognized the *Benny* test as a threshold test eliminating near-verbatim copying but

chose not to apply it because the court felt that the defendants took more than allowed by the *Berlin* test with regard to both the conceptual and physical aspects of the copyrighted cartoon characters. In applying the *Berlin* test, the court in *Air Pirates* stated:

> In evaluating how much of a taking was necessary to recall or conjure up the original, it is first important to recognize that given the widespread public recognition of the major characters involved here, such as Mickey Mouse and Donald Duck, in comparison with other characters very little would have been necessary to place Mickey Mouse and his image in the minds of the readers. (at 757–58)

That court also found it significant that the infringing parody focused on the personalities of the characters and not merely their physical appearances. In discussing this factor, the court (in dicta relied upon by Defendants herein for their theory of a "close parallel" requirement) said

> Thus *arguably* defendants' copying *could have been* justified as necessary more easily if they had paralleled closely (with a few significant twists) Disney characters and their actions in a manner that conjured up the particular elements of the innocence of the characters that were to be satirized. While greater license *may be* necessary under those circumstances, here the copying of the graphic image appears to have no other purpose than to track Disney's work as closely as possible. (at 758) (Emphasis supplied)

■ The meaning of the "close parallel" language in *Air Pirates* is not at all clear, and such language is neither binding nor persuasive in the present case. If a parody or satire is to warrant "fair use" protection, then it should parody that part of the original work which it copies. Therefore, if a parody or satire "closely parallels" an entire original work, it should parody at least a majority of those parts or elements of the original work which it parallels. "Scarlett Fever" failed to parody or satirize even a significant portion of the elements of *Gone With The Wind* which it parallels.

This Court has found that even if "Scarlett Fever" was assumed to be a parody or satire, it clearly incorporates more material from the original works than is allowed under the third factor of Section 107 and the *Berlin* test and therefore "fair use" does not apply. However, the Court feels that its analysis would be incomplete without addressing the fourth factor, which is the effect of the use upon the potential market for or value of the copyrighted work. The Defendants in this case have argued that "Scarlett Fever" will not harm the existing or potential markets for either the film "Gone With The Wind" or the novel *Gone With The Wind,* but is more likely to enhance the demand for those works. Defendants have also claimed that a prior authorized stage version of *Gone With The Wind* was a failure and that no authorized stage production is planned for the immediate future, and therefore "Scarlett Fever" does not harm the existing or potential market for such a derivative use of the original works. The Court does not agree with this analysis and finds that "Scarlett Fever" is likely to harm the potential market for or value of the derivative use of *Gone With The Wind* in the form of a theatrical adaptation.

■ The Court first recognizes that a non-parodic or non-satiric stage version of *Gone With The Wind* is a protected derivative use of the original works which only the holders of the valid, existing copyrights in such works have a right to exploit. Harm to the potential market for or value of such a derivative use is more difficult to specify than it is to conceptualize. Defendants argue that since a previous authorized stage version of *Gone With The Wind* was a failure, no future productions are likely to be attempted by local producers, and therefore "Scarlett Fever" can in no way harm the potential market for or value of a future production since no such market or value exists. This logic is persuasive only if the Court assumes that any future production of *Gone With The Wind* would be the same as or very similar to the past failure. This would be an unreasonable assumption to make, especially in light of the highly

positive audience response to the production of "Scarlett Fever" viewed by the Court. The potential for success of "Scarlett Fever" indicates that a future stage production of *Gone With The Wind* superior to the earlier failure is likely to succeed and therefore "Scarlett Fever" could harm a potential market for or value of a stage version of *Gone With The Wind.*

■ The Court acknowledges that this type of analysis is speculative, but that is inherent in the nature of a "potential" market for a future derivative use. This analysis is aided by what Nimmer calls the "functional test". He states that in determining the effect of the Defendants' use upon the potential market for or value of the Plaintiffs' work, a comparison must be made not merely of the media in which the two works may appear, but rather in terms of the function of each such work regardless of media. 3 Nimmer, *The Law of Copyright* § 13.05[B]. Nimmer describes this test as follows:

> If both the plaintiff's and defendant's works are used for the same purpose, then under the functional test the defense of fair use should not be available since the defendant's work serves the same function as that of the plaintiff's. (citations omitted)

> The scope of fair use is then constricted where the two works in issue fulfill the same function in terms of actual or potential consumer demand, and expanded where such functions differ. (citations omitted) (at 13–57 and 13–58)

It can be said that the overall function of both the film "Gone With The Wind" and the novel *Gone With The Wind* is to entertain. The overall function of "Scarlett Fever" is also to entertain. Having found that "Scarlett Fever" is not a parody or satire, its overall function is not criticism, comment, reporting or teaching. Using the "functional test", "fair use" cannot be applied to "Scarlett Fever" because its function is identical to the functions of the film "Gone With The Wind" and the novel *Gone With The Wind* and any potential derivative use of *Gone With The Wind* as a stage

adaptation. As Nimmer notes, similarity of medium is not relevant to application of the functional test. As to Defendants' claim that a prior failure of an authorized stage production destroys the potential market for and value of another authorized production, Nimmer's comments concerning *Meeropol v. Nizer,* 361 F.Supp. 1063 (S.D.N.Y. 1973) seem appropriate:

> The *Meeropol* court was further moved by the fact that plaintiffs' copyrighted work containing such letters had been out of print for almost 20 years. The fact that a work is out-of-print surely cannot mean that the copyright therein is vitiated. Works out of print are published in new editions when the demand becomes sufficient. Such demand may never arise if competitors may freely copy the out-of-print work. (n. 51, at 13–57)

In summing up the foregoing discussion of "fair use", the Court holds that "Scarlett Fever" is neither a parody nor a satire with respect to "fair use" protection, and further holds that even if "Scarlett Fever" was a parody or satire, "Scarlett Fever" would not be protected by "fair use" because it copies more of "Gone With The Wind" than is allowed by the *Berlin* test. Also, "Scarlett Fever" does not warrant "fair use" protection because it has the same function as "Gone With The Wind" under the "functional test" and therefore is likely to harm the potential market for or value of the copyrighted work.

**2. Other Defenses.**

Defendants also argue that "Scarlett Fever" is protected by a First Amendment privilege even if it is found not to be a "fair use", relying upon *Triangle Publications v. Knight-Ridder Newspapers,* 445 F.Supp. 875 (S.D.Fla.1978). There, the publisher of "TV Guide" sought an injunction to prevent a newspaper from displaying "TV Guide" in a "comparative" advertisement placed by a competitor. The District Court held that although "fair use" did not protect defendant's copying, the First Amendment did allow depiction of "TV Guide" in the ad and that when the First Amendment and the

Copyright Act operate at cross-purposes, the Free Speech Guarantee of the First Amendment takes precedence.

██ Even if *Triangle* has implications as broad as the holding would indicate, it still has no relevance to the present case in light of the finding made above that "Scarlett Fever" is not a parody or satire. Thus, it does not constitute the sort of critical comment which might draw First Amendment protection of the fair use defense into play.

 Finally, Defendants assert that Plaintiffs have either abandoned, or are estopped to assert, any copyright protection against parodies or satires of *Gone With The Wind,* citing certain other spoofs of *Gone With The Wind* as to which no legal action was taken by Plaintiffs. Of course, this defense is foreclosed by the Court's finding that "Scarlett Fever" is not predominately a satire or parody. But additionally, it should be noted that abandonment can only be shown by proving that the copyright owner intended to surrender his rights. *Imperial Homes Corp. v. Lamont,* 458 F.2d 895 (5th Cir. 1972). Estoppel requires both intent and knowledge on the part of the one to be estopped, plus the other party's right to rely. *Hampton v. Paramount Pictures Corp.,* 279 F.2d 100 (9th Cir. 1960). No evidence was presented which would indicate the existence of Plaintiffs' intent to abandon, or any conduct of Plaintiffs which might furnish the basis for justifiable reliance by Defendants.

Based upon the foregoing, the Court holds that Plaintiffs have established a substantial likelihood of success on the merits.

### D. Irreparable injury to Plaintiffs.

██ The final element necessary for the Court to be empowered to issue a preliminary injunction is a finding that unless the injunction issues, Plaintiffs will be irreparably injured, and that the extent of their damage would be greater than that which might otherwise accrue to Defendants should the injunction issue. In the instant case, Plaintiffs presented credible evidence that the stage rights to *Gone With The Wind* have significant value. Plaintiffs also presented testimony that the value of the stage rights would be severely diminished if "Scarlett Fever" was allowed to continue. Defendants countered to this point basically to the effect that Defendants' operation is on such a small scale, and will play to such a small audience, that the performance of "Scarlett Fever" could not make a material dent in the value of Plaintiffs' interests. Further, Defendants argued that Plaintiffs' failure to effectively develop or utilize the stage rights to *Gone With The Wind* in the continental United States to date reflects that such rights have insubstantial value. The Court accepts neither of these seemingly contradictory positions in its entirety. Rather, while recognizing that the extent of damage caused by copyright infringement is most difficult to quantify, the Court finds that Plaintiffs' testimony·sufficiently showed that continued performance of "Scarlett Fever" would have some adverse effect on Plaintiffs' copyright interests, particularly on the value of the stage rights. Further, that damage could become severe, should a musical comedy version of "Gone With The Wind" such as "Scarlett Fever" or similar to "Scarlett Fever" be allowed to run in other locales or on an extended basis.

██ Furthermore, a presumption of irreparable injury exists for the purpose of a preliminary injunction determination once Plaintiff has made out a case of copyright infringement. *Wainwright Securities Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91 (2d Cir. 1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Uneeda Doll Co. v. Regent Baby Products Corp.,* 355 F.Supp. 438 (E.D.N.Y.1972); *Robert Stigwood Group Ltd. v. Sperber,* 457 F.2d 50, 55 (2d Cir. 1972); *Rice v. American Program Bureau,* 446 F.2d 685, 688 (2d Cir. 1971). In the instant case, this presumption has not been rebutted by Defendants; additionally, as noted, Plaintiffs have introduced evidence of damage which the Court credits.

### E. Conclusion.

Based on the findings contained within the foregoing Memorandum Opinion, and the conclusion of law that Defendants' production "Scarlett Fever" infringes upon Plaintiffs' copyrights and interests protected by said copyrights, Plaintiffs' Motion for a Preliminary Injunction is hereby GRANTED and pending trial on the merits, Defendants are hereby enjoined from further production of "Scarlett Fever".[7]

---

**7.** In view of the Court's action, it is deemed unnecessary to make findings on Plaintiffs' claims under the Lanham Act, Uniform Anti-Dilution Act, Uniform Deceptive Trade Practices Act, and for unfair competition. Moreover, the Court is not certain that the parties' oral prehearing stipulation regarding the issues to be heard actually included non-copyright issues.