LUCKY COUSINS TRUCKING, INC., Plaintiff,

v.

QC ENERGY RESOURCES TEXAS, LLC and QC Energy Resources, LLC, Defendants.

QC Energy Resources Texas, LLC, QC Energy Resources, LLC, QC Energy Resources, Inc. and Quality Carriers, Inc., Counter–Plaintiffs,

v.

Lucky Cousins Trucking Inc., Givo Younani, and Skyline Transport Group, LLC, Counter–Defendants.

CASE NO. 8:16–cv–866–T–26TGW

United States District Court, M.D. Florida.

Signed 07/28/2016

Jonathan E. Pollard, Law Office of Jonathan E. Pollard, Ft Lauderdale, FL, Christopher S. Prater, The Rock Law Group, PA, Maitland, FL, for Plaintiff and Counter–Defendants.

Anthony J. Palermo, Joseph H. Varner, III, Holland & Knight, LLP, Ernest Joseph Marquart, Shumaker, Loop & Kendrick, LLP, Tampa, FL, for Counter–Plaintiffs and Defendants.

## ORDER

RICHARD A. LAZZARA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** comes before the Court on Counter–Plaintiffs' Motion for Preliminary Injunction (Dkt. 24) with supporting Affidavits (Dkts. 25, 26, 27) and Counter–Defendants' Response in Opposition with exhibits (Dkt. 35).

Counter–Plaintiffs, QC Energy Resources Texas, LLC, QC Energy Resources, LLC, QC Energy Resources, Inc., and Quality Carriers, Inc. ("collectively "QCER"), move, pursuant to Rule 65(a), Federal Rules of Civil Procedure, and Middle District of Florida Local Rule 4.06, for a preliminary injunction against Counter–Defendants, Lucky Cousins Trucking Inc. ("Lucky Cousins"), Givo Younani ("Younani"), and Skyline Transport Group, LLC ("Skyline"), enjoining them from violating the non-compete, non-solicitation, and non-disclosure obligations in the parties' Contractor Agreement. Upon due and careful consideration of the parties' submissions, the Court finds that the Motion for Preliminary Injunction must be denied.

## CLAIMS AND ALLEGATIONS

QCER allege that they provide logistics and transportation services directly and through independent contractor affiliates to customers in the chemical and oil and gas industries. They also allegedly provide substantial support and assistance to their independent contractor affiliates to ensure that they have the necessary resources and training to provide safe and reliable transportation services to their customers and that such support includes access to QCER's valuable confidential information and trade secrets. QCER allege that in order to protect their investment as well as customer relationships and goodwill, they ask their affiliates, including Counter–Defendant Lucky Cousins, to enter contractor agreements that include non-compete, non-solicitation, and confidentiality provisions.

The subject of this cause of action is a June 14, 2014 Contractor Agreement entered between QCER and Lucky Cousins, pursuant to which Lucky Cousins agreed to perform transportation services for QCER and their customers as an independent contractor affiliate. (See Dkt. 26, McAvoy Affidavit, ¶¶ 8–12 & Ex. 2.) Under the Contractor Agreement, Lucky Cousins provided transportation services hauling crude oil, water, acid, chemicals, and equipment throughout the United States. (Id. at Ex. 2 § 19 & 05/28/15 Amendment § 4.) Lucky Cousins agreed, among other things, that neither it nor its principals would compete with QCER nor solicit their customers during the term of the Contractor Agreement and for a period of two years following termination. (Id.)

Lucky Cousins was an independent contractor affiliate of QCER for less than two years and QCER allege that during that time they continuously secured work for Lucky Cousins in several states, paid it generous revenue shares, gave it requested financial concessions as well as cash assistance of more than one million dollars to support its operations. (Id. at ¶ 21.) They allege that despite the substantial

assistance they provided, Lucky Cousins failed to prosper, and its President, Younani, then established Skyline as a competing business in violation of restrictive covenants in the Contractor Agreement. (Id. ¶ 29–46.) QCER assert that the motive was to cut QCER out of the revenue stream from its customers and to avoid significant financial obligations in order to funnel profits into Younani's pocket. QCER allege that upon discovering Counter–Defendants' efforts to compete, they terminated the Contractor Agreement. They maintain that Counter–Defendants' alleged conduct is prohibited by the terms of the Contractor Agreement, prohibitions which extend beyond the Contractor Agreement's term. QCER seek a preliminary injunction that, among other things, enforces the restrictive covenants in the Contractor Agreement and enjoins Counter–Defendants from competing with QCER, interfering with QCER's customer relationships, and using or disclosing QCER's trade secrets and other confidential information.

In contrast, Counter–Defendants assert that in January 2016, QCER informed Lucky Cousins that it was receiving pressure from its private equity firm to shut down QCER's energy hauling business, which was less successful than its chemical hauling operation. They maintain that Lucky Cousins was entirely dependent on QCER for hauling assignments and, therefore, a decision to terminate the energy hauling operations would have left it without work or any source of revenue. Counter–Defendants contend that QCER employees continued to warn Younani that the energy hauling operations might end, and that, at the very least, QCER would no longer guarantee loans for hauling equipment purchases. They assert that during this time, QCER even attempted to recruit Lucky Cousins' managers and that, in February 2016, Chris Broussard, President of QCER, informed Younani that an announcement as to the fate of QCER's transportation operations was imminent. Counter–Defendants allege that Younani assisted in the formation of Skyline, which was established with the purpose of acquiring and leasing equipment to Lucky Cousins or alternatively, to provide hauling services with its own equipment if QCER ended its energy hauling operations. They assert that after learning that Younani had shown interest in acquiring some hauling equipment, QCER terminated the Agreement with Lucky Cousins on March 8, 2016.

## LEGAL STANDARD

In order to secure a preliminary injunction, QCER must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that they will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, that the injunction would not be adverse to the public interest." TransUnion Risk & Alternative Data Sols., Inc. v. MacLachlan, 625 Fed.Appx. 403, 405 (11th Cir. 2015) (citing Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) in which the Court applied rule 65 where an employer sought a preliminary injunction to prevent former employee from competing). Although QCER correctly set forth the four elements necessary for a preliminary injunction, they simply fail at this juncture to meet the applicable evidentiary standards and burdens under those elements. Because a preliminary injunction "is an extraordinary and drastic remedy," Plaintiffs must "clearly" establish the burden of persuasion as to each of the four criteria. Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003) (quoting

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)).

To succeed on the merits of their cause of action, QCER must (1) demonstrate that the restrictive covenants are enforceable and (2) defeat each of Counter–Defendants' affirmative defenses. See North Am. Prods. Corp. v. Moore, 196 F.Supp.2d 1217, 1224–30 (M.D. Fla. 2002); Metro–Goldwyn–Mayer, Inc. v. Showcase Atlanta Co-op. Productions, Inc., 479 F.Supp. 351, (N.D. Ga. 1979) (citing Canal Authority v. Callaway, 489 F.2d 567 (5th Cir. 1974) ("On a motion for preliminary injunction, plaintiffs must demonstrate a likelihood of success on the merits at trial as to asserted affirmative defenses, as well as to the elements of Plaintiffs' *prima facie* case.")). In order for QCER to enforce the restrictions at issue, they must "plead **and prove** the existence of one or more legitimate business interests justifying the restrictive covenant." Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1231 (11th Cir. 2009) (emphasis added). Generally, a legitimate business interest takes the form of confidential information, substantial customer relationships, or extraordinary training and education. See § 542.335, Fla. Stat.; see also Hapney v. Central Garage, Inc., 579 So.2d 127, 132 (Fla. Dist. Ct. App. 1991). A restrictive covenant may be no broader than is necessary to protect the legitimate business interest at issue. See § 542.335(1)(c), Fla. Stat.; see also Shields v. Paving Stone Co., Inc., 796 So.2d 1267, 1268–69 (Fla. Dist. Ct. App. 2001) (narrowing a non-solicitation clause where employer "did not provide sufficient evidence to support the over-inclusive nature of the restrictive covenants").

## DISCUSSION

Here, QCER have not yet proven legitimate business interests justifying an otherwise illegal restraint of trade and, as a consequence, they fail to prove that the restrictions at issue are enforceable. QCER operate a hauling business and they use contractors, like Lucky ·Cousins, as sub-haulers presumably because it is more cost-effective than hiring numerous employees and buying numerous trucks of its own. And while QCER maintain that they provided Lucky Cousins with "financial concessions," "revenue splits," "equipment rental discounts," "expense reimbursement," and "cash assistance," these are simply not the types of interest that can be protected through use of a restrictive covenant. These appear to be common practices in the hauling industry that cannot constitute a protectable business interest or extraordinary training. It is also important to note that Lucky Cousins was an experienced hauling company well before its affiliation with QCER. See Passalacqua v. Naviant, Inc., 844 So.2d 792, 796 (Fla. Dist. Ct. App. 2003) (finding no protectable interest training where employees had prior experience in making cold call sales and testified that the company's sales tactics were generic). Additionally, QCER fail to identify anything that Lucky Cousins learned during its affiliation with QCER that is now being unfairly used against QCER. Neither Lucky Cousins nor Younani were ever employees of QCER and the investment made by QCER in Lucky Cousins through the business affiliate relationship appears to be typical of the investment that any similar contractor would make in a sub-contracted hauler. However, "[a] legitimate business interest must represent an investment by the employer and must enable unfair competition if misappropriated." IDMWORKS, LLC v. Pophaly, 192 F.Supp.3d 1335, 1340 (S.D. Fla. June 23, 2016). Protection against ordinary competition is not a legitimate business interest. Furthermore, QCER utterly fail to set forth any "substantial" customer

relationships that are at issue or show that any customer goodwill is in need of protection.

Finally, although QCER allege that they provided "pricing and proprietary models and methodologies, including (a) the most aggressive rates; (b) customer lists and contact information; (c) customer relationship management data (including sales reports, customer revenue activity, sales pipeline reports, and market research); d) API–approved affiliate policies and procedures, including best practices and customer requirements relating to loading, unloading, hauling, and safety; and e) proprietary customer billing and affiliate compensation system," (Dkt. 24, p. 12), they fail to articulate exactly how the information is unique or proprietary or to explain how Counter–Defendants could unfairly utilize that information to compete against it. See, e.g., Passalacqua, 844 So.2d at 796 (finding no legitimate interest in confidential information where plaintiff failed to articulate how its methods were unique and how defendant could use that information against them in market to gain unfair advantage); see also Thyssenkrupp Elevator Corp. v. Hubbard, 2013 WL 5929132, at *5 (M.D. Fla. Nov. 4, 2013) ("Because ThyssenKrupp has failed to present any evidence showing that Hubbard was privy to information unique to its business or crucial to its success, the Court cannot conclude that ThyssenKrupp has met its burden of showing confidential information as a legitimate business interest"). Generic allegations do not establish a legitimate business interest. See WellCare Health Plans, Inc. v. Preitauer, 2012 WL 1987877, at *3 (M.D. Fla. May 23, 2012), report and recommendation adopted, 2012 WL 1987692 (M.D. Fla. June 4, 2012).

Section 542.335(g)(3), Florida Statutes, requires a court to also consider the affirmative defenses when determining the enforceability of restrictive covenants. Here, Counter–Defendants' affirmative defenses that QCER breached the Contractor Agreement first, prevented Lucky Cousins from performing under the Agreement, and now come to the Court with unclean hands clearly bear directly upon that determination. QCER is not entitled to injunctive relief enforcing the restrictive covenants at issue unless it can overcome each of the affirmative defenses and, at this juncture, the Court is not convinced it can do so. In light of all the foregoing, the Court simply cannot find that there is a substantial likelihood of QCER succeeding on the merits of its cause of action.

 QCER must also demonstrate irreparable harm that is "actual and imminent," not merely remote or speculative. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). They primarily argue that Counter–Defendants will continue using confidential information and trade secrets (Dkt. 24, p. 20), but as previously discussed, the information identified by QCER as confidential may actually be available from public sources (see Dkt. 35, Younani Declaration, Ex. A, ¶¶ 6, 14). QCER fail to articulate exactly how the information is unique or proprietary or to explain how Counter–Defendants could unfairly utilize that information to compete against it. QCER also allege harm as a result of Skyline's competition, yet it is in question whether QCER are even eligible to bid on the work that Skyline is now performing (see id. at ¶¶ 41–42). Counter–Defendants could not have harmed QCER by bidding for and winning a job that QCER were not allowed to bid on and could not have performed. Even if this Court were to find that Skyline's competition harmed QCER, QCER fails to demonstrate anything other than calculable money damages, at best, thereby rendering injunctive relief unnecessary.

Additionally, the Court must consider the effects that a preliminary injunction will have on Counter–Defendants. Should a preliminary injunction issue, Skyline asserts that it will cease hauling and will have no revenue. (Id. at Ex. A., ¶ 44.) It will lay off its entire staff and default on its obligations. (Id.) Younani will be personally liable for Skyline's obligations and will not be able to fulfill those obligations. (Id.) Younani asserts that a preliminary injunction in this case would not actually be temporary—it would effectively end Skyline's business permanently and bankrupt Younani. (Id.) See TransUnion Risk & Alternative Data Sols., Inc. v. MacLachlan, 625 Fed.Appx. 403, 407 (11th Cir. 2015) (finding that court must consider harm to individual in issuing injunction to enforce restrictive covenant under Florida law). Finally, inasmuch as QCER fails to demonstrate that the restrictive covenants at issue are reasonably necessary to protect a legitimate business interest, the Court is not persuaded that the injunctive relief sought would serve the public interest.

**ACCORDINGLY,** it is **ORDERED AND ADJUDGED:**

Counter–Plaintiff's Motion for Preliminary Injunction (Dkt. 24) is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on July 28 2016.