**DALLAS COWBOYS CHEERLEADERS, INC., Plaintiff-Appellee,**

v.

**SCOREBOARD POSTERS, INC. and Arny Freytag, Defendants-Appellants.**

**Texas Cowgirls, Inc., Defendant.**

**No. 79–1291 Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

Aug. 20, 1979.

Rehearing Denied Sept. 25, 1979.

Stanley R. Moore, Thomas L. Crisman, Dallas, Tex., Marvin H. Kleinberg, Thomas A. Turner, Jr., Beverly Hills, Cal., Clifford Weinstein, Dallas, Tex., for Texas Cowgirls.

Jenkens & Gilchrist, Kenneth R. Marvel, D. Marshall Simmons, Richards, Harris & Medlock, Roger C. Clapp, Dallas, Tex., for plaintiff-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The Dallas Cowboys Cheerleaders are a group of women who perform as cheerleaders on the sidelines during games played by

the Dallas Cowboys, a football team. The women are employed by the Dallas Cowboys Cheerleaders Corporation, a wholly owned subsidiary of the Dallas Cowboys Football Club, Inc. In 1977 five members of the Cowboys Cheerleaders posed for a poster to be distributed commercially. The poster shows the five Cowboys Cheerleaders dressed in their official cheerleading outfits in front of a glittering backdrop, with the words "Dallas Cowboys Cheerleaders" appearing in large script at the bottom of the poster. As of December 1978, over three quarter of a million copies of the poster had been sold at an average retail price of $2.50 apiece. The poster is copyrighted.

The Texas Cowgirls are a group of former Dallas Cowboys Cheerleaders. Five members of the Texas Cowgirls posed for a poster mimicking the Cowboys Cheerleaders poster. The five women in the Cowgirls poster wear uniforms nearly identical to the official Cowboys Cheerleaders uniforms, they are positioned in a formation like that of the women in the Cowboys Cheerleaders poster, they are in front of a similar backdrop, and at the bottom of Cowgirls poster there is written in large script: "The Ex-Dallas Cheerleaders." In the Texas Cowgirls version of the poster, however, the halter tops of the cheerleading uniforms are unbuttoned, leaving the women in the poster with exposed breasts. This poster was offered for public sale. Orders had been placed and a magazine featuring photographs of naked women had published a picture of the poster.

The Cowboys Cheerleaders filed suit on December 19, 1978 against the Texas Cowgirls, Scoreboard Posters, Inc., the manufacturer and distributor of the Cowgirls poster, and Arny Freytag, the promoter and copyright owner of the Cowgirls poster. The complaint alleged copyright infringement, service mark infringement and unfair competition, and sought a temporary restraining order to prevent distribution of the Cowgirls poster.

Three days following the filing of the complaint, the district court conducted a hearing on the application for a temporary restraining order. After hearing argument from both sides, the district judge indicated to counsel present that he intended to grant the temporary restraining order, and further that he intended to try the case on the merits within two weeks, on January 2 or 3, 1979. See Fed.R.Civ.P. 65(a)(2). He then ordered a brief recess to allow both sides an opportunity to agree on an appropriate sum for a security bond. See Fed.R.Civ.P. 65(c). A $20,000 bond was agreed to. When the hearing recommenced the court orally announced its decision on the temporary restraining order application. The court found that there was "a likelihood of confusion in the minds of the public" between the two posters and that dissemination of the Cowgirls poster would cause the plaintiffs "irreparable harm and that no other remedy at law is adequate." In addition, the court made the following statement:

> The parties have agreed among themselves that should the Court issue an Injunction, which I have just done, that it be treated as a Temporary Injunction meaning that it will remain in effect until this case is tried and the Court has set it for trial on the merits beginning at 9:30 on January the 2nd 1979, that being Tuesday and concluding, hopefully, no later than Wednesday of that week.

The court later filed formal written findings of fact and conclusions of law amplifying its prior ruling. In the written order the court found it probable that publication of the Cowgirls poster was a copyright infringement, that it constituted false representation in violation of 15 U.S.C. § 1125(a), and that it established a common law tort of unfair competition. Echoing its prior language, the court concluded the order by stating that "because of the consent of all parties, this should be entered as a preliminary injunction pending trial on the merits."

The expeditious trial on the merits contemplated by the district court's order never occurred. Instead, the defendants filed a notice of appeal to this court. A motion to dismiss the appeal was filed by the plaintiff/appellee on the theory that this court

did not have jurisdiction because the defendant/appellants had agreed that if the court granted a temporary restraining order it should be treated as an actual preliminary injunction. The appellees claimed that the appellants could not bring an appeal from an order to which they had consented. The motion to dismiss was denied by a panel of this court in an order dated April 5, 1979.

Although we review the district court's order as the grant of a preliminary injunction, we do so on the basis of the record as developed before the district court. In this case the parties put on their proof in a proceeding designated as an expedited hearing to consider the grant of an unreviewable Temporary Restraining Order. It was only at the conclusion of this hearing that the parties requested the court to issue its order as a preliminary injunction. The court responded by saying that it would so style its order, but it expressly emphasized that its action was based on the limited record that had been adduced and that a full exploration of the facts had not occurred. The court consistently manifested a willingness to accord a prompt hearing on a permanent injunction with the right to develop a full evidentiary record. Litigation that might have been expeditious has become protracted, and appellate review that might have been made on a fully developed record has been forced on a sparse one; the situation, however, is of the appellants' own making. Though the prior panel's decision binds us to hold that the order entered is reviewable, it does not bind us to conduct that review without due regard to the posture of the proceedings at the time of entry.

■ The grant or denial of a preliminary injunction lies within the discretion of the district court and is reviewable on appeal only for abuse of that discretion. *Louisiana Consumer's League, Inc. v. Louisiana State Board of Optometry Examiners*, 557 F.2d 473, 474 (5th Cir. 1977); *Ruiz v. Estelle*, 550 F.2d 238, 239 (5th Cir. 1977); *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056, 1060 (5th Cir. 1976). To obtain a preliminary injunction it must be demonstrated that the movant has a substantial likelihood of success on the merits, that irreparable injury will be suffered unless the injunction issues, that the threatened injury to the movant outweighs the damage which the injunction may cause the opponent, and that the injunction would not be adverse to the public interest. *E.g., Louisiana Consumers League, supra*, 557 F.2d at 474; *Texas v. Seatrain International, S. A.*, 518 F.2d 175, 179 (5th Cir. 1975).

■ Those sponsoring the Cowgirls poster argue that in weighing the factors of irreparable harm, comparative injury to the parties, and the public interest, the district court failed to heed their first amendment rights to publish their poster unfettered by prior restraint. First amendment values, however, are not the only interests of constitutional dimension in this litigation. Congress has an affirmative constitutional duty "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S.Const. Art. I. § 8, Cl. 8. The judgment of the constitution is that free expression is enriched by protecting the creations of authors from exploitation by others, and the Copyright Act is the congressional implementation of that judgment. 17 U.S.C.A. §§ 101 *et seq.; Washingtonian Pub. Co. v. Pearson*, 306 U.S. 30, 36, 59 S.Ct. 397, 400, 83 L.Ed. 470 (1939); *Mazer v. Stein*, 347 U.S. 201, 214, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954). The Copyright Act specifically authorizes a federal court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.A. § 502(a). Preliminary injunctions are a common judicial response to the imminent infringement of an apparently valid copyright. *E.g., Meredith Corp. v. Harper & Row Publishers, Inc.*, 500 F.2d 1221 (2d Cir. 1974); *Herbert Rosenthal Jewelry Corp. v. Grossbardt*, 428 F.2d 551, 553 (2d Cir. 1970); *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623 (2d Cir. 1962); *Uneeda Doll Co., Inc. v. Regent Baly Products Corp.*, 355 F.Supp. 438, 445 (E.D.N.Y.

1972); *Douglas International Corp. v. Baker*, 335 F.Supp. 282, 284 (S.D.N.Y.1971). The first amendment is not a license to trammel on legally recognized rights in intellectual property. *See Zacchini v. Scripps-Howard Broadcasting Co.*, 443 U.S. 562, 577 and n.13, 97 S.Ct. 2849, 2848–2849, 53 L.Ed.2d 965; *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 759 (9th Cir. 1978); *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1169–1171 (9th Cir. 1977); Nimmer, *Does Copyright Abridge the First Amendment Guarantees of Free Speech and Press*, 17 U.C.L.A.L. Rev. 1180, 1192–1193 (1970). If the record demonstrated a substantial likelihood that the Cowboys Cheerleaders could have a valid copyright infringement claim against the defendants the district court was well within its discretion in granting the preliminary injunction.

■ The Cowboys Cheerleaders poster is copyrightable matter. 17 U.S.C.A. § 102(a)(5). The defendants have never claimed that the Cowboys Cheerleaders copyright is invalid, and they have not pretended that their poster did not copy from the original Cowboys Cheerleaders poster. Viewing the two works in juxtaposition it is obvious that the Cowgirls poster was intended to imitate its predecessor, so it could derive parasitic value from it. The defendants' defense to the infringement claim is that the partial nudity of the women in their poster is a parody of the original, and thus protected under the doctrine of fair use. *See* 17 U.S.C. § 107.

■ Not all parodies and satires, however, are protected as fair use. Two celebrated examples of satire that fell short of fair use are contained in *Loew's Inc. v. Columbia Broadcasting System*, 131 F.Supp. 165 (S.D.Cal.1955) *aff'd sub nom. Benny v. Loew's, Inc.*, 239 F.Supp. 532 (9th Cir. 1956), *aff'd by an equally divided court*, 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583 (1958), and *Walt Disney Productions v. Air Pirates, supra*, 581 F.2d 751 (9th Cir. 1978). In the *Loew's* case, comedian Jack Benny satirized

the Metro-Goldwyn Mayer picture "Gaslight" in a burlesque television sketch entitled "Autolight." The court found that despite the social value of parody, Benny had exceeded his license in borrowing from the movie original and it upheld the claim of copyright infringement.

The *Disney* case involved the appropriation of 17 Walt Disney cartoon characters, including Mickey Mouse and Donald Duck, by an underground comic book series known as the "Air Pirates Funnies." The "Air Pirates" portrayed the Disney characters as members of a promiscuous, drug ingesting counterculture. 581 F.2d at 753. As described by one commentator, "Air Pirates" "placed several well-known Disney cartoon characters in incongruous settings where they engaged in activities clearly antithetical to the accepted Mickey Mouse world of scrubbed faces, bright smiles and·happy endings." Note, Parody, Copyrights and the First Amendment, 10 U.S.F.L.Rev. 564, 371 (1976).

■ The line between fair use and infringement is not always easy to divine. *See Berlin v. E. C. Publications, Inc.*, 329 F.2d 541 (2nd Cir. 1964); *Columbia Pictures Corp. v. National Broadcasting Co.*, 137 F.Supp. 348 (S.D.Cal.1955). It may well be that if the parties had developed their proof instead of rushing from this most preliminary hearing to appeal the defendants' fair use defense might prevail. A preliminary injunction may issue, however, despite the existence of a plausible defense, as long as the movant demonstrates a substantial likelihood of success. Nothing beyond an unelaborated invocation of the term "parody" was ever put before the district court, and we cannot fault the court if it found the simple allusion to the concept of parody insufficient to shift the calculus of probabilities in the defendants' favor. Our appellate function is not to try this case in the first instance but to review the discretion of the district judge in light of what was put before him.[1] Finding no abuse of discre-

---

1. Our holding that the district court was correct in determining that the plaintiffs enjoyed a

substantial likelihood of success on the merits in no way intimates any view concerning the

tion, the grant of the preliminary injunction is

AFFIRMED.

correct outcome of this litigation when it is fully tried. Since we have found that the district court's determination on the plaintiffs' copyright infringement claim was not an abuse of discretion, we pretermit any discussion of the plaintiffs' service mark and unfair competition claims.

*Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.