**GEORGIA TELEVISION COMPANY,
d/b/a WSB–TV, Plaintiff,**

v.

**TV NEWS CLIPS OF ATLANTA, INC.,
Carolyn Duncan, Jeffery Duncan,
Defendants.**

**Civ. A. No. 88–CV–2207–JTC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 9, 1989.

Order of Court July 13, 1989.

---

Terrence B. Adamson, Peter Crane Canfield, Dow, Lohnes & Albertson, Atlanta, Ga., for plaintiff.

Lawrence K. Nodine, Needle & Rosenberg, Anthony B. Askew, Eugene S. Zim-

mer, Jones, Askew & Lunsford, Atlanta, Ga., for defendants.

## ORDER OF COURT AND PRELIMINARY INJUNCTION

CAMP, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction and plaintiff's motion to expedite consideration of its motion for preliminary injunction. The court heard evidence on these matters on November 2, and 3, 1988. For the following reasons, the above motions are GRANTED.

## I. FINDINGS OF FACT

Plaintiff Georgia Television Co. d/b/a WSB–TV (hereinafter "WSB–TV") operates a television station in Atlanta, Georgia, pursuant to a license granted by the Federal Communications Commission. WSB–TV transmits across Channel 2.

WSB–TV creates and broadcasts several daily news programs, weekly public affairs, and other locally produced programs (hereinafter "broadcast news programs"). WSB–TV's daily news programs consist mainly of pre-recorded news stories produced inside and outside of WSB–TV's studios that are linked together by live commentary from the station's anchor persons. WSB–TV also creates and broadcasts several weekly public affairs programs, news specials, and documentaries. A notice of copyright appears at the end of each newscast. The programs display WSB–TV's federal registered service marks "WSB–TV" and "Action News" to identify WSB–TV as the source of the broadcast. These broadcasts represent the creative expression of news events and not the underlying factual basis of such news events.

WSB–TV makes three separate types of records of its broadcast. A non-broadcast quality audio and/or visual library copy of all broadcasts is kept approximately three years. This copy is simultaneously recorded twenty-four hours a day at the time of transmission. A professional quality tape may be made of news broadcasts. This record is kept approximately thirty days. Also, copies of specific stories are made that are then used for later excerpting by WSB–TV for later broadcasts. These stories may or may not have aired. These tapes may be held for an extended period of time before broadcast.

Defendant TV News Clips of Atlanta, Inc. (hereinafter "TV News Clips") is a commercial enterprise that videotapes television news programs, a practice known as news monitoring, and edits these news videotapes for its customers, a process known as news clipping. TV News Clips does not seek the permission of WSB–TV or any other broadcaster before selling the tapes, nor does it place a notice of copyright on these tapes. Defendant does place a label on each tape, which states: "For personal use only and not for rebroadcast." Ms. Carol Duncan is the President, Director, and registered agent of TV News Clips. Defendant Jeffery Duncan is Secretary of TV News Clips.

Since the Fall of 1980 defendants, or their predecessors in interest, have operated TV News Clips. The business was originally a one-person operation run out of Ms. Duncan's home. The business has now expanded into a full-fledged commercial operation run out of an office. Besides Ms. Duncan, TV News Clips employs three employees, two full-time and one part-time. Five videotaping machines operate on a regular basis. Defendants receive approximately 100 requests per month for videotaping services. In 1987, TV News Clips grossed $150,000.00.

In the past, defendants, or their predecessors in interest, directly solicited business by identifying persons and organizations and attempting to sell them relevant news clips. Now, however, direct solicitation of customers accounts for only 2% of TV News Clips' business. Ms. Duncan testified that most customers directly contact TV News Clips, with no solicitation by the Company.[1] Referrals from advertising

---

**1.** Ms. Duncan offered the following examples as pertinent: Mark Hyman, a WSB–TV news reporter, referred a local policeman to TV News Clips to obtain a copy of news broadcasts in

agencies or other entities generate a portion of defendants' business. TV News Clips also advertises in the Yellow Pages and is listed in advertising agency brochures. Two years ago, defendant did a direct mailing to current clients, advertising agents, and major corporations, which explained the monitoring service.

TV News Clips' representative clients include RJR Nabisco, Internal Revenue Service, IBM, Georgia Power, AT & T, Georgia Republican Party, and Georgia Democratic Party. TV News Clips provided Atlanta Mayor, Andrew Young, the tapes at issue in this case. These tapes were daily newsclips of the Democratic National Convention, which aided the Mayor in his daily preparation for news conferences. For these services, Mayor Young praised TV News Clips' services.

Charges for defendants' news monitoring and clipping services are based on the time expended researching and producing newsclips for customers who require specific monitoring services. In some cases, TV News Clips submits a fixed bid, such as the news monitoring services performed for Mayor Young. In a more typical arrangement, TV News Clips is compensated per clip based on zero to ten minutes for which customers pay $65.00 for an initial newsclip purchase. Each additional clip on the same cassette would be $30.00. Additional charges are involved when customers request TV News Clips to obtain newsclips in other markets from other monitors.

One of defendants' arguments is that defendants simply acted as the agents of certain individuals in taping programs for the individual's personal use. The argument is that if an individual is expressly authorized to tape television broadcasts for personal use pursuant to *Sony Corp. v. Universal City Studios,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), then the individual's agent or employee can also videotape the program for that individual's personal use. The court finds as a matter of fact, however, that defendants acted neither as the agent nor as the employee of the individuals and entities to whom it sold tapes. The contractual arrangement between defendants and its customers indicates defendant acts as an independent contractor, selling a product as well as a service.

WSB–TV does not currently market videotaped copies of its broadcasts or news stories. WSB–TV allows the public limited access to its broadcast videotapes. However, the court finds that such access is on a case-by-case basis, and at the discretion of WSB–TV management. Normally, a person affected by a news story may view WSB–TV's copy and audiotape the program. Under special circumstances depending entirely on WSB–TV's discretion, videotapes may be provided. Of course, WSB–TV does respond to lawful subpoenas for videotapes.

Andrew Fisher, WSB–TV's Station Manager, testified that all requests for copies of its broadcasts are referred to himself or David Lippoff, the News Director. These callers are told that although WSB–TV does not sell copies of its broadcasts, WSB–TV honors requests to view tapes at the station and, on occasion, has arranged for viewings outside the station. Fisher testified that WSB–TV allows a person viewing a tape to make an audio recording of the tape, to take still or motion photographs of the tape, and will provide, at the station's expense, a transcript of the broadcast. Fisher also testified that WSB–TV regularly lends copies of certain broadcasts to educational institutions. In addition, the station provides videotaped copies of its broadcasts in response to any lawful subpoena.

Phoebe Holybee, a lieutenant with the Georgia Tech police, testified that WSB–TV interviewed her on August 24, 1988. Subsequent to this interview, Holybee called WSB–TV on September 1, 1988, to inquire

which he appeared. Ms. Duncan also testified that Susan Hooper, a former producer of WSB–TV's 11:00 P.M. news broadcast referred clients to TV News Clips. Ms. Hooper also directly purchased a newscast tape from defendants for

her resume file. Ms. Duncan further testified that David Lippoff, News Director of WSB–TV, called her to obtain a copy of a newsclip that had been accidentally erased. Lippoff, however, disputes such a claim.

about purchasing a copy of her taped interview. Holybee was told that WSB–TV did not provide transcripts, and no further information was available. Ms. Holybee's testimony supports the finding that WSB–TV provides the public with little access to its broadcasts.

WSB–TV strongly opposes defendants' marketing of videotapes of WSB–TV broadcasts or news stories. WSB–TV offers the following examples as evidence of damage caused by defendants' activities. First, such marketing would enable competitors to use portions of WSB–TV programs without consent. Thus, WSB–TV's competitive advantage, created by its resources and labor, would be lost. WSB–TV, however, cited no example of a competitor's use of any portion of a broadcast taped by defendants. Second, defendants' sales of WSB–TV newscasts may deprive WSB–TV of a substantial tax benefit it claimed for donations of portions of its film library to the University of Georgia.

Third, copies of the newsclips made by defendants may be misused. For example, political candidates or corporations may use portions of defendants' newsclips to misrepresent WSB–TV's position or to suggest favoritism or an endorsement. WSB–TV offers only one example of such an incident which occurred in the early 1980's in a local election campaign.

A separate reason WSB–TV gives as evidence of potential damages caused by defendants' activities is that video segments in a particular broadcast may originate from other news sources; music synchronized to images may be owned by composers; film footage may be borrowed from the network; and commercials may be owned by sponsors. While WSB–TV has obtained a license to use these materials, WSB–TV is not licensed to allow copying and reselling of this matter. WSB–TV alleges that defendants' use of these materials may subject it to a charge of copyright infringement. WSB–TV, however, was unable to show any such complaint against it.

WSB–TV also alleges that defendants' newsclipping services will decrease advertising viewership and thus reduce WSB–TV's advertising revenues. WSB–TV's advertising revenues depend to a great extent on its on-air viewership. WSB–TV sells adds based on the number of viewers who watch the station. Defendant's newsclips delete advertisements. Therefore, defendant's newsclipping services increase public access to WSB–TV's broadcasts, but WSB–TV is not able to count such viewership in setting its commercial advertising rates.

Finally, WSB–TV's maintains that defendants' newsclipping services could jeopardize its ability to sell its distribution rights on its broadcasts. Andrew Fisher, WSB–TV's station manager, testified that defendants' activities may impair WSB–TV's ability to market broadcasts, such as "The Boy King." WSB–TV recently sold the distribution rights to this program, which dramatically reenacted the boyhood of Martin Luther King. The revenue that had been anticipated from the sale of these rights was critical to the decision to produce the program. However, Mr. Fisher did not testify to any example of any portion of the news broadcasts at issue here which WSB–TV has ever attempted to distribute.

WSB–TV's arguments on the potential for damages caused by defendants' activities are largely speculative. Defendants claim that any damages to WSB–TV caused by their newsclipping are outweighed by the social utility of their services. The court does find that TV News Clips is providing a useful service by providing entities and individuals directly affected by the subject matter of WSB–TV broadcasts to become more familiar with important public commentary affecting their interests. The useful nature of defendants' business is somewhat supported by the fact that WSB–TV's own personnel have utilized TV Newsclips services. *See supra* note 1.

The instant litigation arose from WSB–TV's discovery that in mid and late July 1988, despite having received an advance notice of infringement from plaintiff on June 29, 1988,[2] defendants copied and sold

---

**2.** WSB–TV has served on defendants advance notices of potential infringement on at least a

to the City of Atlanta portions of twenty-seven different WSB–TV broadcast news programs. Although WSB–TV suspected copyright infringement when it first began sending the advance notices of infringement, it delayed in filing the present action until 1988 to obtain what it believed to be litigable proof of such activity in late July 1988.

After effecting the copyright registration which is a prerequisite to bringing a copyright infringement action, WSB–TV filed the present action. WSB–TV seeks a preliminary injunction to enjoin the infringement of its copyright pursuant to 17 U.S.C. § 502(a), 15 U.S.C. § 1116, and Fed. R.Civ.P. 65(a). WSB–TV also seeks impoundment of all copies of its broadcast news programs in defendants' possession or control pursuant to 17 U.S.C. § 503(a).

## II. CONCLUSIONS OF LAW

A. *Copyright law requires this Court to issue a preliminary injunction.*

■ Plaintiff WSB–TV seeks a preliminary injunction pursuant to 17 U.S.C. § 502(a), which authorizes a federal court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."[3] Preliminary injunctions are a common judicial response to the imminent infringement of an apparently valid copyright. *Dallas Cowboy Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184 (5th Cir. 1979). Such an injunction may issue for the copying of WSB–TV's broadcasts, which are not the subject of the present litigation. The fact that WSB–TV's future news broadcasts are not presently created does not preclude injunctive relief against defendants' videotaping these copyrighted broadcasts because 17 U.S.C. § 502(a) provides for injunctions to prevent infringement of a copyright and not necessarily the registered copyright that gives rise to the

action. *Pacific and Southern Company, Inc., d/b/a WXIA–TV v. Duncan, d/b/a TV News Clips*, 744 F.2d 1490, 1499 n. 17 (11th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985) (hereinafter "*WXIA I*").

A plaintiff seeking injunctive relief must demonstrate (1) that there is a substantial likelihood of plaintiff's success on the merits at trial; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs the damage which the injunction may cause the opponent; and (4) that the injunction would not be adverse to the public interest. *See Dallas Cowboy Cheerleaders*, 600 F.2d at 1187; *Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*, 642 F.Supp. 1031, 1033 (N.D. Ga.1986). The first factor, substantial likelihood of success is most important in determining whether an injunction should issue in a copyright action. *Id.*

1. There is a substantial likelihood that WSB–TV will succeed on the merits at trial.

■ If the plaintiff demonstrates a *prima facie* case for copyright infringement and the absence of any affirmative defenses, the plaintiff has shown a substantial likelihood of success on the merits and is usually entitled to a preliminary injunction to enjoin such infringement pursuant to 17 U.S.C. § 501(a). *Original Appalachian Artworks*, 642 F.Supp. at 1040. "If the record demonstrated a substantial likelihood that the [plaintiff] could have a valid copyright infringement claim against defendants, the district court was well within its discretion in granting the preliminary injunction." *Dallas Cowboy Cheerleaders*, 600 F.2d at 1188. *See Wainwright Securities, Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759; *Ency-*

---

monthly basis since December 11, 1986, pursuant to 17 U.S.C. § 411(b).

**3.** WSB–TV has also prayed for injunctive relief pursuant to its non-copyright claims including those for trademark infringement, unfair competition, and violation of Georgia's Prohibition

of Deceptive Trade Practices. Nevertheless, in copyright cases, a plaintiff seeking preliminary injunctive relief must demonstrate the requirements under 17 U.S.C. § 502(a). Accordingly, the court will initially consider injunctive relief pursuant to 17 U.S.C. § 502(a).

*clopedia Britannica Educational Corp. v. Crooks,* 447 F.Supp. 243 (D.C.N.Y.1978).

WSB–TV has met the two requirements necessary to demonstrate a *prima facie* case of copyright infringement which require the plaintiff to show (1) ownership of a valid, existing copyright and (2) copying of the copyrighted material by the defendant. *Original Appalachian Artworks,* 642 F.Supp. at 1033. WSB–TV has satisfied this two-part requirement.

■ In order to determine whether WSB–TV owns a valid, existing copyright in its news programs, the first question is whether broadcast television news programs constitute original works susceptible to copyright under 17 U.S.C. § 102(a). WSB–TV has shown that its broadcasts represent a creative product and involve editorial discretion. Copyright protection does not extend to news "events" or the facts or ideas which are the subject of the news reports. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1368 (5th Cir. 1981); *Wainwright Securities, Inc.,* 558 F.2d at 95; *WXIA I,* 572 F.Supp. at 1192. However, news reports, as distinguished from their factual basis, involve editorial discretion and creativity and thus are subject to copyright protection. *International News Service v. Associated Press,* 248 U.S. 215, 234, 39 S.Ct. 68, 70, 63 L.Ed. 211 (1918); *Wainwright,* 558 F.2d at 95; *Pacific and Southern Company, Inc., d/b/a WXIA–TV · v. Duncan, d/b/a TV News Clips,* 572 F.Supp. 1186, 1192 (N.D.Ga. 1983). "[A] very slight degree of original contribution to form will suffice" to differentiate an original work subject to copyright protection from a simple restatement of fact not subject to copyright protection. 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 2.11[B] (1988). Such protection extends to electronic news reports as well as written reports. *See* 17 U.S.C. § 102(a)(5), (6), and (7).

■ Pursuant to 17 U.S.C. § 102 and § 411(b), copyright protection subsists in these programs once they become "fixed" in a tangible medium. In other words, copyright protection attaches to the broadcast feature only when the first copy of the transmission is made. *See e.g., WXIA I,* 744 F.2d at 1494; 17 U.S.C. § 101 (definition of "fixed").

It is undisputed that WSB–TV has properly claimed and perfected its copyrights in its broadcasts. WSB–TV simultaneously records its broadcasts at the time of transmission. WSB–TV has informed the public of its copyright claims in its programs through broadcast of its notices of copyright at the conclusion of each program and has informed defendants in particular through service of advance notices of potential infringement. Moreover, WSB–TV has filed with the Copyright Office formal applications for registration of its copyrights in the twenty-seven programs at issue in this case, and one program has received registration on an expedited basis. "[C]ertificates of registration ... 'constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate,' 17 U.S.C. § 410(c), including the requirements of originality and susceptibility to copyright under 17 U.S.C. § 102(a)." *Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir.1986). WSB–TV has a statutory right to institute an infringement action for both the program that received registration on an expedited basis and as-yet unregistered programs pursuant to 17 U.S.C. § 411(b). In conclusion, WSB–TV has made the required showing of ownership of a valid, existing copyright in its news broadcasts.

The second factor necessary to demonstrate a *prima facie* in a copyright infringement action is the copying of the copyrighted material. *Original Appalachian Artworks,* 642 F.Supp. at 1033. Defendants concede that they copied and sold copies of portions of the twenty-seven WSB–TV broadcasts at issue in this case. Defendants intend to continue to copy and sell plaintiff's future newscasts.

■ In addition to the above analysis, the paramount factor in determining the likelihood of success is that defendants have previously litigated their activities in this Court. Atlanta station WXIA filed suit against defendant Duncan and the

predecessor of defendant TV Newsclips in this Court, alleging that their activities constituted unlawful copyright infringement.[4] *See Pacific and Southern Company, Inc., d/b/a WXIA–TV v. Duncan, d/b/a TV News Clips,* 572 F.Supp. 1186 (N.D.Ga. 1983), *aff'd in part and rev'd in part,* 744 F.2d 1490, 1493 (11th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985). The Circuit Court of Appeals affirmed the District Court's entry of judgment for WXIA, concluding that defendants' activities violated the copyright laws and that defendants' "fair use" and first amendment defenses were without merit. *See WXIA 1,* 744 F.2d at 1494–99. The Circuit Court of Appeals, however, reversed as an abuse of discretion the District Court's refusal to enter a permanent injunction, holding that the plaintiff in that action was entitled to an injunction preventing further copying of future news broadcasts by defendants as a matter of right. *See WXIA I,* 744 F.2d at 1499–1500. On April 1, 1985, the Supreme Court denied defendants' Petition for Certiorari. *See* 471 U.S. at 1004, 105 S.Ct. at 1867, 85 L.Ed.2d 161 (1985).

This previous litigation demonstrates that WSB–TV has a substantial likelihood of success on the merits in the present case because few factual distinctions exist between the *WXIA I* case and the instant litigation. In *WXIA I,* the television station did provide greater public access to its broadcasts. WXIA did not market video tape copies; however, it always honored requests to view tapes and usually allowed persons to buy specific tapes. WSB–TV allows less access to tapes than WXIA; however, WSB does allow some access to the broadcasts, as well as audiotaping by members of the public affected by the broadcast. Defendants only increase access to the public in a very limited way. In view of the reasoning and the broad holding of the Eleventh Circuit in the *WXIA* litigation, these factors are not sufficient to differentiate WSB's situation from WXIA's.

In summary, plaintiff has clearly demonstrated a *prima facie* case for copyright infringement. Furthermore, WSB–TV has demonstrated a substantial likelihood of success because defendants lack any substantial affirmative defense. *See Metro Goldwyn–Mayer v. Showcase Atlanta Coop. Productions,* 479 F.Supp. 351, 355 (N.D.Ga.1979) ("On motion for a preliminary injunction, plaintiffs must demonstrate a likelihood of success on the merits at trial as to asserted defenses, as well as to the element of plaintiffs' *prima facie* case").

In *WXIA I,* the Eleventh Circuit rejected defendants' "fair use" defense pursuant to 17 U.S.C. § 107 on facts similar to those in the instant case.[5] *WXIA I* also establishes that any defense based on the first amendment is inapplicable in the present action. *See Wainwright Securities,* 558 F.2d at 95 (generally, "[c]onflicts between interests protected by the first amendment and copyright laws thus far have been resolved by application of the fair use doctrine").

■ Defendants' claim that current copyright protection for news reporting will be abolished by the United States' implementation of the Berne Convention is also without merit. The implementation of the Berne Convention will not occur until Spring 1989 and will not have a retroactive effect on U.S. copyright law. *See* the Berne Convention Implementation Act of 1988, Section 13(a), 17 U.S.C. § 101 note (1988). Notwithstanding the implementation date of the Berne Convention, it will not abolish copyright protection for news reports. In Article 2(a), the Berne Convention states that copyright protection will not extend to "news of the day." The Convention gives no indication that this provision is not compatible with existing U.S. law, which extends copyright protec-

---

**4.** The suit was filed against "Carol Duncan d/b/a TV News Clips." As this Court recognized, defendant TV News Clips of Atlanta, Inc. is the corporate successor in interest to defendant Duncan's sole proprietorship, TV News Clips. *Pacific and Southern, Inc. v. Duncan,* 618 F.Supp. 469, 471 N. 2 (N.D.GA, 1985). Defendant Jeffery Duncan was not named in this suit.

**5.** Defendants concede that the "fair use" defense is inapplicable in the present action.

tion to the creative expression of facts in a news programs, and not the underlying factual basis of these news reports. *International News Service*, 248 U.S. at 215, 39 S.Ct. at 68; *Wainwright*, 558 F.2d at 95; *WXIA I*, 572 F.Supp. at 1192.

■ Next, defendants argue that their operation is consistent with the videotaping for personal use that the Supreme Court approved in *Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Defendants contend that they are merely agents for individuals or corporations whose home videotaping for personal, non-commercial use was authorized by the *Sony* decision.

Based on an analysis of 17 U.S.C. §§ 106 and 107, the *Sony* decision does suggest that private, non-commercial videotaping in the home would not infringe copyright law. The *Sony* court emphasizes that such non-infringing videotaping of news broadcasts must be for personal, non-commercial use:

> although every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright, noncommercial uses are a different matter.

*Sony*, 464 U.S. at 451, 104 S.Ct. at 793. *See also WXIA I*, 744 F.2d at 1496 (A commercial purpose makes copying of a copyrighted work onto a videotape cassette presumptively unfair). The Court finds that defendants' videotaping WSB–TV broadcasts is for a commercial purpose and that TV News Clips is a commercial operation. *WXIA I*, 744 F.2d at 1496. Defendants' actions cannot be held a non-infringing use based on *Sony*.

■ Finally, defendants also argue that the policy underlying the copyright laws supports a finding in their favor of non-infringement. Copyright protection is the grant of a monopoly privilege. *Sony*, 464 U.S. at 429, 104 S.Ct. at 782. Originally, this limited grant was intended to motivate the creative activity of authors and inventors and "to allow public access to products of their genius after the limited period of exclusive control had expired." *Sony*, 464

U.S. at 429, 104 S.Ct. at 782; U.S.C.A. 1787, Const. Art. 1, Section 8. Defendants maintain that WSB–TV's monopoly on its broadcasts does not encourage creativity on the part of the creators of such broadcasts. Thus, defendants argue that WSB–TV has abused such a privilege through the limited and arbitrary access it allows the public to tapes of its broadcasts.

While this Court recognizes that defendants offer access to WSB–TV broadcasts that WSB–TV may not afford the public, this Court cannot rewrite the copyright laws. As the Supreme Court in *Sony* made clear, "Congress ... has been assigned the task of defining the scope of the limited monopoly" available under copyright law. 464 U.S. at 429, 104 S.Ct. at 782. In the *WXIA* case, defendants argued that they come within certain statutory exceptions. *See WXIA I*, 744 F.2d at 1494, n. 6. As this argument tacitly recognized, the appropriate forum in which defendants should assert their present policy arguments is in the Congress. Precedent binding on this Court has interpreted copyright law contrary to defendants' position. On facts nearly identical to those in the present case, the Eleventh Circuit has found that defendants' videotaping and newsclipping services constitute copyright infringement. *See WXIA I*, 744 F.2d at 1490. This Court is constrained by such binding precedent. WSB–TV has demonstrated a *prima facie* case of copyright infringement and a substantial likelihood of success on the merits, especially in light of the previous *WXIA I* litigation.

2. This Court must find that WSB–TV will suffer irreparable injury unless the injunction issues.

■ Once a copyright holder has made out a *prima facie* case of copyright infringement, irreparable injury is presumed. *Original Appalachian Artworks*, 642 F.Supp. at 1040; *Wainwright Securities, Inc.*, 558 F.2d at 94; *O'Neill Developments, Inc. v. Galen Kilburn, Inc.*, 524 F.Supp. 710, 715 (N.D.Ga.1981); *Metro Goldwyn Mayer*, 479 F.Supp. at 362. In copyright infringement cases, the standard for preliminary injunction is less rigorous,

and the copyright holder may be presumed to suffer irreparable harm when his right to exclusive use of copyright material is invaded. *Encyclopedia Britannica Educational Corp. v. Crooks,* 447 F.Supp. 243 (D.C.N.Y.1978). When the plaintiff demonstrates a substantial likelihood of success at trial by establishing a *prima facie* case of copyright infringement and the absence of any affirmative defenses, a significant showing of actual damages is not required because irreparable injury is presumed. *Original Appalachian Artworks,* 642 F.Supp. at 1040.

 A showing of irreparable harm, however, may be necessary if the plaintiff has failed to establish a substantial likelihood of success because a plausible affirmative defense exists or the plaintiff has failed to establish a *prima facie* case of infringement due to the dissimilarity of the copyrighted work and the allegedly infringing work. *See Dallas Cowboy Cheerleaders,* 600 F.2d at 1184; *Plains Cotton Cooperative Association v. Goodpasture Computer Service, Inc.,* 807 F.2d 1256 (5th Cir.1987); *Apple Barrel Productions, Inc. v. R.D. Barrel,* 730 F.2d 384 (5th Cir.1984); *McGraw Hill v. Worth Publishers, Inc.,* 335 F.Supp. 415 (S.D.N.Y.1971); *Life Music, Inc. v. Wonderland Music Co.,* 241 F.Supp. 653 (S.D.N.Y.1965). In the present case, however, the plaintiff has demonstrated a *prima facie* case of copyright infringement and the absence of any affirmative defenses; therefore, irreparable injury may be presumed.

As the Eleventh Circuit recognized in *WXIA I,* the District Court should presume irreparable injury especially when the alleged infringement is of a commercial nature as in this case. *See WXIA I,* 744 F.2d at 1497 ("a commercial use naturally produces harmful effects"). The Supreme Court in *Sony* explained that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony,* 464 U.S. at 451, 104 S.Ct. at 793. "If the intended use of the copyrighted material is for commercial gain, the likelihood of future harm may be presumed." *Id.*

 Defendants argue that irreparable harm should not be presumed in this case because plaintiff delayed two years in bringing this action; thus, the equitable defense of laches should be recognized. WSB–TV asserts several reasons for this delay. First, WSB–TV assumed that defendants would cease the infringing activity given the *WXIA I* litigation and WSB–TV's subsequent cease and desist letters. WSB–TV also delayed in bringing this litigation to obtain what it considered litigable proof.

Defendants' defense based on laches has been previously rejected by this court. *Original Appalachian Artworks,* 642 F.Supp. at 1040. *See e.g., Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 267 (6th Cir.1988) (two year delay in bringing infringement action did not rebut the presumption of irreparable harm). Moreover, defendants have produced no evidence that they were prejudiced by WSB–TV's alleged delay. Accordingly, laches is not an appropriate defense in this action.

3. This Court must find that the threatened injury to WSB–TV outweighs the damage that the injunction may cause defendants.

 This Court is cognizant of the potential damage an injunction may cause defendants as Ms. Duncan has testified that the effect of this injunction would destroy TV News Clips' business. Copyright law, however, dictates that such injury merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement of WSB–TV's asserted legal rights. *See e.g., Original Appalachian Artworks,* 642 F.Supp. at 1040. In proceeding on a motion for preliminary injunction in cases in which plaintiff made a *prima facie* showing of copyright infringement, a preliminary injunction should not be denied merely because of the devastating effect or potential destruction of the defendant's business. *See Concrete Machinery Company v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600–612 (1st Cir. 1988) ("It would be incongruous to hold

that the more an enterprise relies on copyright infringement for survival, the more likely it will be able to defeat the copyright owner's efforts to have that activity immediately halted.") (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984) ("If the preliminary injunction were to be denied because of the 'devastating effect' the injunction would have on the defendant's business: 'if that were the correct standard, then a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone;' *Doll Craft Industries, Ltd. v. Well–Made Toy Manufacturing Company*, 479 F.Supp. 1105, 1117 (E.D.N.Y.1978)"). Based on such authority, this Court is constrained to find that the balance of hardships weighs heavily in support of an injunction. *See, e.g., Original Appalachian Artworks*, 642 F.Supp. at 1040; *O'Neill Developments*, 524 F.Supp. at 715.

Pursuant to Fed.R.Civ.P. 65(c), this Court will require plaintiffs to post a security bond. Rule 65(c) requires the posting of security in the sum as the Court deems proper for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Based on the evidence presented at the hearing, the Court finds the amount of $125,000.00 as appropriate security. This restraining order shall not issue until the appropriate bond has been posted.

4. This Court finds that an injunction would not be adverse to the public interest.

■ The final prerequisite to preliminary injunction relief is to determine where the public interest lies. Once the plaintiff in a copyright infringement action has established a likelihood of success on the merits, there is seldom any question of whether the entry of an injunction will serve the public interest. "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing misappropriate of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc.*, 714 F.2d at 1255. *See, e.g., Dallas Cowboy Cheerleaders*, 600 F.2d at 1187; *Original Appalachian Artworks*, 642 F.Supp. at 1040–41; *O'Neill Developments*, 524 F.Supp. at 715.

On facts similar to those at issue in this case, the Eleventh Circuit in *WXIA I* found public interest to be served by upholding copyright protections, despite the fact that TV News Clips' services increased public access to the copyrighted work. *WXIA I*, 744 F.2d at 1499–1500. This court is constrained to follow such precedent.

### B. *Plaintiff is not entitled to impoundment.*

■ Plaintiff asked this Court to impound copies of WSB–TV news programs in defendants' possession pursuant to 17 U.S.C. § 503(a). This section authorizes a federal court to order on reasonable terms, the impounding of all copies "claimed to have been made or used in violation of the copyright owner's exclusive rights," as well as duplicating equipment used in reproducing such copies, such as "all plates, molds, matrices, masters, tapes, film negatives, or other articles...."

District courts have great discretion in ordering impoundment as the Copyright Act does not delineate the standards which govern the issuance of such orders. *Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.*, 508 F.Supp. 854, 861 (N.D.Ga. 1981), *rev'd on other grounds*, 694 F.2d 674 (11th Cir.1983). Section 503(a) merely states "The court *may* order the impounding...." [6] (emphasis added). The Court declines to order impoundment and finds it an appropriate issue for the final adjudication on the merits.

---

**6.** While some authority holds that a district court has no discretion to determine what to impound upon a showing of copyright infringement, such authority involves a final judgment, not the issuance of a preliminary injunction. *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir.1972), *cert. denied*, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88

## III. CONCLUSION AND PRELIMINARY INJUNCTION

■ For the reasons stated above, the court GRANTS the plaintiff's motion for expedited consideration and motion for preliminary injunction *effective immediately* upon the posting of $125,000.00 security bond. Plaintiffs may satisfy this requirement by posting with the clerk of court a bond in a form approved by the clerk. Defendants and all others acting by or through or in concert with defendants, upon plaintiffs' posting of adequate security, are hereby RESTRAINED and ENJOINED during the pendency of this action from copying or selling copies of WSB–TV's broadcast news, public affairs or other locally produced programs, in whole or in part. The court, however, DENIES the plaintiff's motion for impoundment.

SO ORDERED.

### ORDER OF COURT

Currently before the court is defendants' motion for reconsideration of this court's order and preliminary injunction of January 5, 1989; defendants' motion for a protective order; plaintiff's motion to compel; defendants' motion to file a supplemental brief; and plaintiff's motion for leave to file a supplement to the complaint. For the following reasons, defendants' motion for reconsideration is DENIED [# 32]; defendants' motion to extend discovery is GRANTED [# 39]; defendants' motion for a protective order [# 40] is GRANTED; plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART [# 41]; defendants' motion to file a supplemental brief is GRANTED [# 52]; and plaintiff's motion for leave to file a supplement to the complaint is GRANTED [# 53].

### I. Defendants' Motions for Reconsideration and Leave to File a Supplemental Brief

■ Defendants seek reconsideration of this court's order and preliminary injunction, entered on January 10, 1989, on the basis that plaintiff did not comply with the jurisdictional prerequisites for maintaining an infringement action. Defendants maintain that plaintiff did not seek registration in compliance with 17 U.S.C. § 411(b), a jurisdictional prerequisite to bringing this action.

Registration is a condition precedent to the filing of an infringement action. 17 U.S.C. § 411(a); *Nimmer on Copyright*, § 7.16[B][1]. Section 411 is therefore a jurisdictional statute. Section 17 U.S.C. § 411(b) provides an exception to the requirement of registration prior to the institution of an infringement action for works consisting of sounds, images, or both:

> In the case of a work consisting of sound, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may, either before or after such fixation takes place, institute an action for infringement ... if, in accordance with requirements that the Registrar of Copyrights shall prescribe by regulation, the copyright owner—
>
> (1) serves notice upon the infringer, not less than ten or more than thirty days before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work; and
>
> (2) makes registration for the work, if required by subsection (a), within three months after its first transmission.

Thus, the copyright owner must serve timely notice upon the infringer before the first fixation of the work, and must identify the work, the time and source of its first transmission, and must declare an intent to secure copyright in the work. The copyright owner must also make registration for this work within three months of its first transmission.

Plaintiff introduced evidence both at the preliminary injunction hearing and attached to their Complaint that establishes they have complied with the jurisdictional prerequisites of § 411(b). On June 27, 1988, plaintiff WSB–TV served on defendants pursuant to 17 U.S.C. § 411(b), formal written notice identifying WSB–TV's broadcast news programs and declaring WSB–TV's intention to secure copyrights

**952**

in these programs. All of the broadcasts upon which WSB–TV bases its copyright infringement claims are within the regularly scheduled news broadcasts delineated in the June 27, 1988, notice, except for an unscheduled news presentation at 8:00 p.m. on July 17, 1988. The June 27, 1988, notice, however, is sufficient as to this broadcast because the notice specifies that it applies to unscheduled news presentations such as the 8:00 p.m. broadcast on July 17, 1988. The newscasts which are the subject of this copyright infringement were broadcast on July 13–22, 1988. Therefore, WSB–TV's June 27, 1988, notice was properly served upon defendant within the requirement of § 411(b) of not less than ten or more than thirty days before the transmission at issue. WSB–TV's also properly registered these works within three months after their first transmission on August 15, 1988, or August 23, 1988, and August 30, 1988. Accordingly, WSB–TV, has complied with the requirements of § 411(b).

Defendants argue that WSB–TV has not complied with § 411(b) because it did not decide to register the copyright claim until after the advance notice was sent. This argument is unpersuasive because the June 27, 1988, notice sent to defendants specifically states that WSB–TV intends to seek copyright registration. Defendants also argue that § 411(b) does not apply to WSB–TV's broadcasts at issue in this case because they contain prerecorded segments. *See KCNC–TV, Inc. v. Broadcast Information Services, Inc.,* 9 U.S.P.Q.2d 1732(d), 717 F.Supp. 1449 (Colo.1988). In *KCNC–TV,* a defendant copied and sold the segment called "Wednesday's Child," a program segment that appeared in its newscast. The court reasoned that "Wednesday's Child" was pretaped and thus "KCNC could have registered its copyright for the pretaped segment before it transmitted the news broadcast in which it was included...." 9 U.S.P.Q.2d at 1735, 717 F.Supp. at 1453. Explaining that the copyrighted work did not contain live lead-in, the court held that § 411(b) was inapplicable since the work was not simultaneously fixed and transmitted.

Even though portions of WSB–TV's broadcasts contain pretaped segments, WSB–TV is entitled to copyright protection for the live audiovisual works which, due to time constraints and the nature of the program, cannot possibly be registered prior to transmission, unlike the broadcasts in *KCNC–TV.* Reports of news stories, particularly stories breaking near broadcast time, cannot be registered in the copyright office prior to their transmission on a news program. WSB–TV's broadcasts, therefore, fall within the requirements of § 411(b) of a "work consisting of sound, images, or both, the first fixation of which is made simultaneously with its transmission...." *See Pacific and Southern Co., Inc., d/b/a WXIA–TV v. Duncan, d/b/a TV News Clips,* 744 F.2d 1490, 1499 (11th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985).

In sum, WSB–TV properly complied with the requirements of § 411(b), a jurisdictional prerequisite, in order to maintain this action. Accordingly, the Court DENIES defendants' Motion for Reconsideration. The Court GRANTS the defendants' Motion to file a Supplemental Brief.

## II. *Plaintiff's Motion for Leave to File Supplemental Complaint*

Pursuant to Fed.R.Civ.P. 15(d), plaintiff seeks leave to file a supplement to its complaint. The requested supplementation is necessary to reflect the issuance by the United States Copyright Office of Certificates of Registration for the broadcast news programs identified in the Complaint in Counts 2 through 27. Those counts presently state that plaintiff made application for the Certificate of Registration but do not reflect that "since the Complaint was filed, the certificates have been issued." For good cause shown, the Court GRANTS plaintiff's Motion for Leave to File a Supplemental Complaint.

## III. *Defendants' Motion for a Protective Order*

WSB–TV has requested TV News Clips to produce various documents pertaining to TV News Clips' clients and busi-

ness, such as unpaid and paid invoices, telephone or desk logs and indices on monitoring logs describing the subject matter videotaped by TV News Clips. TV News Clips has agreed to produce the requested documents; however, it has requested that these documents be accorded "Confidential—Counsel Only" status. WSB–TV rejected this request and has agreed to give these documents temporary "Confidential—Counsel Only" status pending the Court's ruling on this motion for a protective order pursuant to Fed.R.Civ.P. 26(c)(7).

Under Rule 26(c)(7), restrictions on discovery material may be allowed for "good cause" when disclosure of a "trade secret or other confidential research, development or commercial information" is involved. "Good cause" in the context of Rule 26(c)(7) means that the party seeking the protective order must demonstrate (1) that the material sought to be protected is confidential and (2) that disclosure will create a competitive disadvantage for the party. *See* 4 Moore's Federal Practice ¶ 26.75, at 26–484.

The Affidavit of Carol Duncan demonstrates that the information WSB–TV seeks is confidential and will create a competitive disadvantage for defendants. A protective order would protect defendant TV News Clips in this action. The Court finds the protective order proposed by defendant TV News Clips to be appropriate. Therefore, the Court will GRANT the defendants' Motion for a Protective Order pursuant to the terms of the protective order proposed by defendants.

## IV. *Plaintiff's Motion to Compel*

■ Plaintiff WSB–TV seeks to compel defendants to comply with discovery request No. 8 of plaintiff's First Request for Production of Documents. WSB–TV seeks to compel production of defendants' tax returns and other personal financial data. Defendants object on the basis that information sought for periods prior to the infringements at issue is irrelevant to plaintiff's copyright infringement claims in this action.

The documents sought by plaintiff include records of television monitoring "profits, earnings or revenues [of defendants] during any time during the period of January, 1980 to the present, including, without limitation, statements of annual, quarterly, and monthly sales, federal and state income tax returns and state and local sales and use tax returns." These documents reflect defendants' profits, earnings, and revenues from television monitoring activities.

This copyright infringement action concerns twenty-seven (27) works that were broadcast in the summer of 1988. Pursuant to Rule 26(b)(1), the information sought prior to January, 1987, is not relevant to plaintiff's damages, even if plaintiff elects statutory damages pursuant to 17 U.S.C. § 504(c). Accordingly, the court DENIES IN PART plaintiff's motion to compel for information sought prior to January, 1987. However, the court will GRANT IN PART plaintiff's motion to compel to the extent that it seeks information after January, 1987, not already produced by defendants.

Accordingly, the Court GRANTS IN PART and DENIES IN PART the plaintiff's Motion to Compel. The Court will extend discovery from sixty (60) days of the entry date of this Order to enable the parties to comply with the above rulings. Accordingly, the Court will GRANT defendants' Motion for an Extension of Discovery.

## V. *Conclusion*

In sum, defendants' motion for reconsideration is DENIED [# 32]; defendants' motion to extend discovery is GRANTED [# 39]; defendants' motion for a protective order [# 40] is GRANTED; plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART [# 41]; defendants' motion to file a supplemental brief is GRANTED [# 52]; and plaintiff's motion for leave to file a supplement to the complaint is GRANTED [# 53].

SO ORDERED.